UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CARLOS RIVERA,

                      Petitioner,                    REPORT AND
                                                              RECOMMENDATION

       -against-
                                                               08 CV 1782 (CBA)(RML)

DALE ARTUS,
Superintendent, Clinton Correctional Facility,

                      Respondent.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Petitioner Carlos Rivera ("petitioner") filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 24, 2008. By order dated July 14, 2009, the Honorable Carol Bagley Amon, United States District Judge, referred the matter to me for a report and recommendation. For the reasons stated below, I respectfully recommend that the petition be denied.

## BACKGROUND AND FACTS

        This case arose out of events that transpired in Queens, New York on August 13, 2002. (Affidavit of Nicoletta J. Caferri, Esq., sworn to July 14, 2008 ("Caferri Aff."), ¶ 4; see also Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated July 14, 2008 ("Opp'n Mem.").) On that date, three men forcibly entered the second-floor apartment at 48-24 58th Lane, where Miguel Lopez ("Lopez") lived with his family, struck Lopez with a gun, and demanded drugs, money, and credit cards. (Caferri Aff. ¶ 4; Trial Transcript, dated Jan. 5-21, 2004 ("Tr."), at 580-84, 586-91.) The men bound Lopez's hands, feet, and mouth with tape (Tr. at 592) and threatened to harm Lopez's wife and daughter if he did not comply with their demands (Tr. at 594). One of the men then strangled Lopez with a cord, causing him to lose consciousness. (Tr. at 604-05.) Lopez eventually freed himself and his wife

and daughter, who were tied up in separate rooms, to find that the apartment had been ransacked, many items had been stolen, and his car was missing from the driveway. (Tr. at 606-12.)

The police arrived shortly thereafter and processed the location for fingerprints, recovering latent prints from, among other things, a jewelry box in Lopez's daughter's room. (Caferri Aff. ¶ 4; Tr. at 785-89.) When petitioner was arrested in May 2003, his fingerprints were matched to those found on the jewelry box, and he was subsequently indicted under Queens County Indictment Number 996/03 on two counts of Robbery in the First Degree (N.Y. Penal Law §§ 160.15[3] and [4]), two counts of Burglary in the First Degree (N.Y. Penal Law §§ 140.30[2] and [4]), two counts of Robbery in the Second Degree (N.Y. Penal Law §§ 160.10[1] and [2a]), Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30[8]), three counts of Unlawful Imprisonment in the First Degree (N.Y. Penal Law § 135.10), Conspiracy in the Fourth Degree (N.Y. Penal Law § 105.10[1]), and Endangering the Welfare of a Child (N.Y. Penal Law § 260.10[1]).

Prior to trial, the court conducted a Sandoval hearing, at which petitioner sought to preclude questioning about his prior criminal convictions. (Tr. at 45-51.) After considering the arguments, the court ruled (1) with respect to petitioner's prior misdemeanor convictions for unauthorized use of a vehicle and sexual misconduct, the State would be permitted to inquire only as to whether petitioner had been convicted of misdemeanors and whether bench warrants had been issued for his arrest, without reference to the facts or circumstances surrounding those crimes (Tr. at 61); (2) with respect to petitioner's prior felony conviction for weapons possession, the State would be permitted to question petitioner about whether he had been convicted of a felony, whether he had used an alias, and the nature of the underlying charge to which he had

pleaded guilty (Tr. at 61); (3) with respect to petitioner's prior felony conviction for attempted sodomy, the State would be permitted to question petitioner about whether he had a felony conviction, but would not be allowed to inquire about the facts and circumstances of that crime (Tr. at 61-62); and (4) the State would not be permitted to cross-examine petitioner about his conviction for failing to register as a sex offender (Tr. at 62).

Petitioner was tried jointly with co-defendant Theil Stapleton.[1] At trial, Lopez identified Stapleton as the man who had struck him with a weapon and choked him (Tr. at 585-86), but he was unable to identify petitioner. Lopez's wife and daughter could not be located and did not testify. (Tr. at 559.)

In addition to the fingerprint evidence, about which the jury heard police and expert testimony (Tr. at 785-89, 1066-69, 1198), the primary evidence against petitioner came from Vanessa Castaneda ("Castaneda"), who testified pursuant to a cooperation agreement. (Tr. at 915.) Castaneda explained that she lived downstairs from Lopez with her mother, who was the building's owner and Lopez's landlord (Tr. at 864-65), and that she had told petitioner, who was her boyfriend at the time, that she thought Lopez was a drug dealer. (Tr. at 867, 871.) Castaneda testified that on August 7, 2002, petitioner said, "wouldn't it be funny to rob the people upstairs[?]" (Tr. at 883.) She stated that one week later, on the day of the robbery, petitioner came to her residence and told her that Stapleton and Daniel Alvarez were outside in petitioner's car and "they were going to rob the people upstairs right now." (Tr. at 891-93.) Petitioner allegedly told Castaneda he would kill her if she told anyone (Tr. at 895), instructed her to "put the stereo loud" so that the other occupants of the house "wouldn't hear what is going on

---

[1] The third accomplice, Daniel Alvarez, pleaded guilty to first-degree burglary and was sentenced to a prison term of five years. (Caferri Aff. ¶ 6 n.1.)

upstairs" (Tr. at 897), and gave her a check for $2000, from someone named Crystal Brown, as payment for "information about Miguel Lopez." (Tr. at 897, 901, 942.) Castaneda immediately went to a local bank to deposit the check, ultimately keeping $1500 for herself and giving some of the money to petitioner. (Tr. at 898, 901-02.)

On January 21, 2004, the jury found petitioner guilty of two counts of Robbery in the First Degree, two counts of Burglary in the First Degree, two counts of Robbery in the Second Degree, three counts of Unlawful Imprisonment in the First Degree, and Endangering the Welfare of a Child. (Tr. at 1561-62; Caferri Aff. ¶ 9.) On March 11, 2004, the court sentenced petitioner to twenty-five years to life on the first-degree robbery and burglary convictions, sixteen years to life on the second-degree robbery convictions, from two to four years on each of the unlawful imprisonment convictions, and one year for endangering the welfare of a child. (Transcript of Sentencing, dated Mar. 11, 2004 ("Sentencing Tr."), at 26-27; Caferri Aff. ¶ 10.) The court directed that these sentences be served concurrently, with the exception of the sentence for one of the counts of unlawful imprisonment, which was to run consecutively to the other sentences. (Sentencing Tr. at 26-27; Caferri Aff. ¶ 10.)

Petitioner filed a notice of appeal on March 17, 2004, and on June 19, 2007, the Appellate Division, Second Department, affirmed the conviction. People v. Rivera, 838 N.Y.S.2d 171 (2d Dep't 2007). On October 19, 2007, the Court of Appeals denied petitioner's application for leave to appeal. People v. Rivera, 878 N.E.2d 616 (N.Y. 2007). Petitioner then filed for reconsideration, which the Court of Appeals denied by order dated January 11, 2008. People v. Rivera, 881 N.E.2d 1210 (N.Y. 2008).

Petitioner filed the instant habeas corpus petition on August 24, 2008. He

contends that: (1) the trial court's Sandoval ruling, allowing the State to cross-examine him about his conviction for gun possession, denied him his right to present a defense and his due process right to a fair trial, (2) the court erred in imposing a consecutive sentence on one of the unlawful imprisonment convictions, (3) the court erred in admitting the fingerprint evidence absent a proper foundation, (4) Castaneda's accomplice testimony was not sufficiently corroborated, and (5) he received ineffective assistance of counsel at trial. (See Petition, filed Apr. 24, 2008 ("Petition"), at 6-11, 24-27.)

**DISCUSSION**

A. Statute of Limitations

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of – (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. §2244(d)(1); see also Lindh v. Murphy, 521 U.S. 320, 327 (1997).

The New York Court of Appeals denied petitioner leave to appeal on October 19, 2007, and petitioner's conviction became final ninety days later, on January 17, 2008. See Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005) ("The conviction became final 90 days thereafter – i.e. after the period in which a litigant can petition for a writ of certiorari from the United States Supreme Court . . . ."); see also Sup. Ct. R. 13. Because petitioner filed his petition with this court on August 24, 2008, within the one-year statutory period, it is timely.

B. Exhaustion of State Court Remedies

Before addressing the merits of a habeas corpus petition, the court must determine

whether the petitioner has exhausted his state remedies. See 28 U.S.C. §§2254(b)-(c); Picard v. Connor, 404 U.S 270, 274 (1971). To satisfy this exhaustion requirement, the petitioner must have fairly presented at each available level of the state courts the same federal constitutional claims raised in his petition to the federal court. See Picard, 404 U.S. at 275-76; Klein v. Harris, 667 F.2d 274, 282-83 (2d Cir. 1981); Coleman v. Greiner, No. 97 CV 2409, 1999 WL 320812, at *2 (E.D.N.Y. May 19, 1999).

Petitioner raised his claims regarding the pre-trial Sandoval ruling, the fingerprint evidence, and ineffective assistance of trial counsel at every available level of review. See People v. Rivera, 878 N.E.2d 616; People v. Rivera, 838 N.Y.S.2d 171. He has thus exhausted his remedies under state law with respect to these three claims, and I will address them further infra.

C. Procedural Bar

The Appellate Division rejected the remaining two claims – concerning the consecutive sentence on one of the counts of unlawful imprisonment and insufficient corroboration of accomplice testimony – on the ground that they were not preserved for appellate review. See People v. Rivera, 838 N.Y.S. 2d at 171. In Coleman v. Thompson, 501 U.S. 722, 729-30 (1991), the Supreme Court stated that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Id. at 729. Failure to preserve an objection for appeal is an independent and adequate state ground barring federal habeas review.[2] See, e.g., Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433

---

[2] With respect to petitioner's claim concerning the consecutive sentence for one count of
(continued...)

U.S. 72 (1977); Franco v. Walsh, 73 F. App'x 517 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999); Glenn v. Bartlett, 98 F.3d 721 (2d Cir. 1996); Bossett v. Walker, 41 F.3d 825 (2d Cir. 1994); Fernandez v. Leonardo, 931 F.2d 214 (2d Cir. 1991); Velasquez v. Leonardo, 898 F.2d 7 (2d Cir. 1990). Therefore, these two claims are procedurally barred[3] and this court will not consider them on the merits.[4]

---

[2](...continued)
unlawful imprisonment, the Appellate Division went on to find "in any event" that "the grave and egregious method used to detain this particular victim precluded application of the merger doctrine," which, if applicable, would have required the imposition of a concurrent sentence. See People v. Rivera, 838 N.Y.S.2d at 171. That the Appellate Division ruled on the merits in the alternative is of no moment. See Harris v. Reed, 489 U.S. 255, 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding so long as it explicitly invokes a state procedural rule as a separate basis for its decision.").

[3] A petitioner may overcome a procedural bar by demonstrating cause for the default and actual prejudice. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977). To show cause for a procedural default, a petitioner must demonstrate "some external impediment preventing counsel from constructing or raising the claim." Murray v. Carrier, 477 U.S. 478, 492 (1986). Petitioner has stated no such cause for his default and none is apparent from the trial transcript.

A second exception to this rule applies where the petitioner demonstrates a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 ("[Where] a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate [cause and prejudice], or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). This is an extremely high bar, as it is "tied . . . to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995). Petitioner has made no claim of actual innocence, either here or in the Appellate Division, and thus cannot show a fundamental miscarriage of justice.

[4] As respondent points out, even if these claims were not procedurally barred, they would fail on other grounds. First,"[i]t is well settled that no federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." Ashby v. Senkowski, 269 F. Supp. 2d 109, 115 (E.D.N.Y. 2003) (quoting Ross v. Gavin, No. 95-2448, 1996 WL 346669, at *1 (2d Cir. June 25, 1996)) (internal quotation marks omitted). Here, petitioner's sentence for unlawful imprisonment fell within the statutory range allowable under New York law. See N.Y. Penal Law §§ 70.06(3)(e), (4)(b). Additionally, "the trial court has discretion to impose consecutive sentences where there are multiple convictions and the offenses represent separate
(continued...)

D. *Sandoval* Ruling

Petitioner contends that the court's pre-trial Sandoval ruling deprived him of due process. (Petition at 6-7.) Such a claim is not cognizable on habeas corpus review because Rivera did not testify at his trial. Luce v. United States, 469 U.S. 38, 43 (1984) ("To raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."); see also United States v. Weichert, 783 F.2d 23, 25 (2d Cir. 1986) ("Luce recognized that an appellate court could not review a trial court's balancing of probative value and prejudice without reference to the witness's actual testimony."); Rohit v. Conway, No. 03 CV 1817, 2007 WL 1540268, at *6 (E.D.N.Y. May 24, 2007) ("[T]he law in this circuit, and indeed among all federal courts, is clear that a criminal defendant generally cannot challenge, post-conviction, a trial court's decision to permit impeachment by prior conviction if the defendant does not take the stand at trial."). I therefore respectfully recommend that this claim be denied.

E. Fingerprint Evidence

Next, petitioner maintains that the trial court erred in admitting the fingerprint evidence without a proper foundation. He argues that, because the police officer who had lifted the prints was deceased at the time of trial, the two police witnesses who testified about the

---

⁴(...continued)
and distinct acts." Ashby, 269 F. Supp. 2d at 115 (citing N.Y. Penal Law § 70.25[2] and collecting cases). Indeed, there is no constitutional right to concurrent, rather than consecutive, sentences. United States v. McLean, 287 F.3d 127, 136-37 (2d Cir. 2002).

Second, while New York Criminal Procedure Law § 60.22 requires that accomplice testimony be corroborated, the Constitution does not prohibit convictions based on uncorroborated accomplice testimony. Scriver v. Tansy, 68 F.3d 1234, 1239 (10th Cir. 1995); United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); Gaiter v. Lord, 917 F. Supp. 145, 150 (E.D.N.Y. 1996). Since it does not implicate constitutional concerns, this claim cannot be addressed in a federal habeas corpus proceeding.

collection of the fingerprints – Police Officer Thomas Reid and Sergeant Glen Peterson – could not provide reliable testimony regarding the provenance of the fingerprint evidence. (See Petition at 10-11.) He also argues that the trial court should not have admitted the writing on the backs of the fingerprint cards under the business records exception to the hearsay rule. (Petition at 10-11.)

Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner with respect to any claim that was adjudicated on the merits if the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) (O'Connor, J., writing for the majority).

A decision is based on an unreasonable determination of the facts "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. However, an erroneous or incorrect application is not enough; the "application must also be unreasonable." Id. at 411. At the same time, the Second Circuit has held this standard to mean that "[s]ome increment of incorrectness beyond error is required . . . . [T]he increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest

judicial incompetence." Campbell v. Fischer, No. 04-CV-3569, 2005 WL 2033465, at *3 (E.D.N.Y. June 30, 2005) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

In order to prevail on a claim that an erroneous evidentiary ruling deprived him of due process under the fourteenth amendment, a petitioner must show, first, that the court made an error, and second, that the error was "so pervasive as to have denied him a fundamentally fair trial." Estelle v. McGuire, 502 U.S. 62, 72 (1991); see also Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (repeating the pervasiveness standard and describing the concept as "elusive"). To determine whether erroneously admitted evidence denied the defendant a fair trial, the court must consider whether the evidence, "viewed objectively . . . was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19. To meet this standard, the erroneously admitted evidence must be "crucial, critical, highly significant." Id.

In this case, petitioner's argument fails for two reasons. First, the trial court's decision was not erroneous. Under New York law, an object associated with a crime is admissible when the prosecution demonstrates "first, that the evidence is identical to that involved in the crime; and, second, that it has not been tampered with." People v. Julian, 360 N.E.2d 1310, 1310 (N.Y. 1977). These requirements are generally met through proof of a complete chain of custody, but any deficiencies in the chain of custody affect the weight to be accorded such evidence, and not its admissibility. People v. Donovan, 530 N.Y.S.2d 174, 174 (2d Dep't 1988). The item will be admitted into evidence as long as the offering party provides reasonable assurances of the identity and unchanged nature of the item. Julian, 360 N.E.2d at

1310; Donovan, 530 N.Y.S.2d at 174.

Here, Sergeant Peterson and Officer Reid both testified that they were assigned to the Queens North Evidence Collection Team and were present when Officer Scott Mayfield, who died before the trial, processed the victim's apartment for latent fingerprints. (Tr. at 756, 768, 1063, 1065, 1135.) Sergeant Peterson testified that he saw Officer Mayfield recover twenty-four latent prints from the apartment, place those prints onto fourteen fingerprint cards, and immediately write the case number, the print number, and the location where each print was found on the backs of the fingerprint cards. (Tr. at 780-81, 811.) He stated that he specifically recalled seeing Officer Mayfield recover a print from the jewelry box in one of the bedrooms. (Tr. at 804-05.) Officer Reid testified that he held the items while Officer Mayfield processed them for prints, and then held the cards after Officer Mayfield wrote the information about the prints on the backs of the cards. (Tr. at 1065, 1070.) He remembered holding the jewelry box while Officer Mayfield processed it for prints, and he stated that he recognized the specific print that came from the jewelry box because "the edge of the jewelry box and the outline of the metal . . . on the edge of the jewelry box" were visible on the card. (Tr. at 1074-77, 1134.) Both witnesses testified that the cards being offered into evidence at trial were in the same condition as when Officer Mayfield created them. (Tr. at 789, 1074.) Thus, the trial court properly admitted the latent print cards into evidence. The Appellate Division found petitioner's argument concerning the admissibility of the fingerprint evidence to be "without merit," People v. Rivera, 838 N.Y.S.2d at 171, and this court cannot second-guess the Appellate Division's decision regarding state law, as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle, 502 U.S. at 67-68.

Second, even if the trial court's evidentiary rulings had been erroneous, the errors were not so crucial, critical, or highly significant as to deprive petitioner of his due process right to a fair trial. See Collins, 755 F.2d at 19. As explained, the primary evidence linking petitioner to the crime came from Castaneda, a cooperating witness whose testimony the jury clearly credited.[5] The fingerprint evidence alone did not provide the basis for conviction, and its absence from the trial would not likely have created a reasonable doubt. See Collins, 755 F.2d at 19. I therefore respectfully recommend that this claim be denied.

F. Ineffective Assistance of Counsel Claim

Petitioner claims that his trial counsel was ineffective for two reasons.[6] First he contends that because Castaneda was a "wholly interested witness . . . counsel was obligated to ensure that [her testimony] be subject to particular scrutiny, by requesting appropriate charge[s] and instruction[s] by the Court." (Petition at 27.) Second, he claims that his counsel was ineffective for failing to properly object to the admission of the fingerprint evidence and failing to thoroughly cross-examine the officers who testified regarding that evidence. (Petition at 26-27.)

---

[5] It bears noting that, although a lack of corroboration would not raise a constitutional issue, Castaneda's testimony was corroborated in a number of respects. Castaneda testified that she saw Stapleton and Alvarez go upstairs to Lopez's apartment, while petitioner stayed downstairs with her until she left to deposit the check petitioner had given her. (Tr. at 892-98.) Lopez supported this account by testifying that three robbers entered his home, and that they arrived at different times. (Tr. at 588-89.) In addition, Castaneda testified that petitioner later gave her a note describing the location of Lopez's car, and that she gave the note to Lopez. (Tr. at 905-07.) In his testimony, Lopez described receiving the note from Castaneda and then going with a police detective in an unmarked car to retrieve his stolen vehicle. (Tr. at 619-22, 624-25, 627.)

[6] Rivera's petition does not make clear the exact grounds underlying his claim of ineffective assistance. This court has paraphrased for clarity, construing his claims broadly. See Hanes v. Kerner, 404 U.S. 519, 520-21 (1971) (a pro se litigant's pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers").

Under clearly established Supreme Court precedent, the benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984); see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (recognizing the Strickland test as "clearly established" law for purposes of AEDPA). A petitioner claiming ineffective assistance of counsel must demonstrate that: (1) his or her counsel's performance was deficient as measured by objective professional standards, and (2) this deficiency prejudiced the defense. See Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999). A petitioner must demonstrate both elements before it can be said that "the conviction resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

With regard to the first element, the Supreme Court has stated that constitutionally deficient performance "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The performance inquiry is highly contextual; it is concerned with whether the attorney's actions were objectively reasonable considering all the circumstances. See Purdy, 208 F.3d at 44. Counsel's challenged conduct must be evaluated in light of the facts of the particular case and from the perspective of the attorney at the time of representation. See Wiggins v. Smith, 539 U.S. 510, 523 (2003); see also Ocampo v. United States, No. 99 CV 6727, 2004 WL 611959, at *4 (E.D.N.Y. Mar. 22, 2004). In addition, there is a strong presumption that an attorney's performance was reasonable, and courts are highly deferential to the decisions made by an

attorney during representation.  See Strickland, 466 U.S. at 689; see also Sepulveda v. United States, No. 95 CV 2569, 1998 WL 355182, at *2 (E.D.N.Y. June 29, 1998) ("Although the Supreme Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, courts should apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'") (quoting Strickland, 466 U.S. at 690).  A convicted defendant making a claim of ineffective assistance must overcome this presumption by identifying the attorney's specific acts or omissions that fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687.

Under the second element, petitioner must establish that there is "a reasonable probability that, but for counsels's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  To obtain federal habeas relief on a claim of ineffective assistance that was previously rejected by a state court, a petitioner must do more than convince the federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly.  Rather, petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  28 U.S.C. § 2254(d)(1); see also Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  To be "objectively unreasonable," a state court's application of clearly established federal law must involve "[s]ome increment of incorrectness beyond error."  Sellan, 261 F.3d at 315 (internal quotation marks omitted).  I will address each of petitioner's ineffective assistance claims in turn.

    1. Interested Witness Charge

Petitioner argues that his trial counsel was ineffective for failing to request an

instruction that Castaneda was an accomplice as a matter of law and that her testimony required corroboration. (Petition at 27.) Respondent counters that defense counsel did not request these jury charges because the court had already told the parties that Castaneda would be declared an interested witness as a matter of law. (See Tr. at 1357-60.) The record supports respondent's contention, as the court did instruct the jury at length about Castaneda's testimony. (See Tr. at 1482, 1493-95.) The court told the jury that Castaneda was an accomplice as a matter of law (Tr. at 1493) and instructed the jury that New York law prohibits a conviction based solely on the testimony of an accomplice (Tr. at 1494). The court also noted the suspicion with which the law views the testimony of an accomplice in a criminal trial, and went on to explain that the jury was to "put aside the accomplice testimony" and review the other evidence to be sure it was reasonably satisfied that the other evidence "standing alone" showed the accomplice was telling the truth. (Id.)

Accordingly, petitioner's counsel's performance was not deficient as measured by objective professional standards, and in denying this claim, the state court applied Strickland in an objectively reasonable manner. Common sense suggests that it would have been entirely unnecessary for petitioner's counsel to request instructions that the court had already agreed to give. (See Tr. at 1357-58, 1362.) Indeed, throughout the trial, defense counsel maintained that Castaneda had been the ringleader, noting that because of her cooperation agreement she had a strong motive to lie. (See, e.g., Tr. at 565-66). Even if counsel had somehow been deficient in failing to request these charges, petitioner would be unable to satisfy the second prong of the Strickland test, as he cannot show prejudice.

  2. Fingerprint Evidence

Petitioner claims his counsel failed to properly object regarding the admission of fingerprint evidence and failed to meaningfully cross-examine the officers who collected that evidence. (Petition at 10-11, 22-23.) However, the record supports respondent's claim that petitioner's counsel objected repeatedly and vigorously to the admission of the latent print cards and to the content of the related testimony. First, counsel objected when Sergeant Peterson testified based on the notes written by Officer Mayfield on the latent print cards. (Tr. at 782-84.) When the State initially offered the latent print card containing petitioner's fingerprints into evidence, trial counsel objected to the admission of the card on the ground that Sergeant Peterson had no independent recollection of where the print had been recovered. (Tr. at 794, 797-99.) The court sustained the objection and declined to admit the card into evidence until a proper foundation had been laid. (Tr. at 782-801.)

Later, when Officer Reid testified about the latent print cards and the prosecutor offered them into evidence, petitioner's counsel conducted a voir dire, during which he asked Officer Reid whether he had reviewed the fingerprint cards and the writings on them prior to testifying. (Tr. at 1081.) Counsel then objected to admission of the cards into evidence based on a lack of proper foundation. (Tr. at 1086; <u>see also</u> Tr. at 1093-94, 1096.) When the prosecution attempted to have the cards, and subsequently, the writing on the cards, admitted under the business-records exception, counsel objected and made multiple arguments about why the cards were not covered by that exception. (Tr. at 1110-11, 1122-23.) Counsel also argued that because the officer who created the cards was unavailable, petitioner's Sixth Amendment right to confront witnesses against him was being violated. (Tr. at 1110-11). Thus, the record belies petitioner's claim that his counsel did not adequately argue for the preclusion of the fingerprint

evidence.

This court notes that Rivera's trial attorney was generally a zealous and effective advocate throughout Rivera's criminal trial. I have reviewed the trial transcript in its entirety, and I find that defense counsel vigorously cross-examined the prosecution's witnesses, pressed for the exclusion of adverse evidence, and argued cogently in summation on his client's behalf. Petitioner therefore cannot show that his trial counsel provided ineffective assistance or that the Appellate Division applied <u>Strickland</u> in an objectively unreasonable manner, and I respectfully recommend that this claim be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the petition for habeas corpus be denied. Objections to this report and recommendation must be filed within fourteen (14) days, with a courtesy copy to Judge Amon and to my chambers, in order to preserve appellate review. <u>See</u> 28 U.S.C. § 636(b)(1).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 20, 2010